[No. 15189. In Bank.—June 26, 1894.]

## ELLEN COSGROVE, Administratrix etc., Respondent, *v.* HENRY C. PITMAN et al., Appellants.

Action For Death—Negligence of Fellow-servant—Employment of Intemperate Engineer—Sobriety at Time of Injury.—Where the death of an employee was caused by the negligence of an engineer, a fellow-servant, who, it was alleged, was addicted to the habit of drinking intoxicating liquors, and that the defendants were negligent in retaining him in their employ by reason of being chargeable with knowledge of this habit, no recovery therefor can be had without proof that the engineer was intoxicated at the time of the accident, or that the injury was in some respects the result of intemperate habits.

Id.—Estates of Deceased Persons—Marriage of Administratrix—Cessation of Authority.—The marriage of an administratrix does not at once deprive her of the power to act, but is merely ground for a proceeding for her suspension and removal, and she is not thereby hindered from continuing to prosecute an action for the death of the decedent.

Appeal from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Pringle, Hayne & Boyd*, for Appellants.

The motion for a nonsuit should have been granted, as it was not shown that the engineer was drunk at the time of the accident. (*Davies* v. *Oceanic S. S. Co.*, 89 Cal. 281; *Warner* v. *New York etc. R. R. Co.*, 44 N. Y.

465; *Zumwalt* v. *Chicago etc. R. R. Co.*, 35 Mo. App. 661.) It was also necessary for the plaintiff to show that the engineer's drunkenness was the cause of the accident, which was not done. (*Zumwalt* v. *Chicago etc. R. R. Co.*, 35 Mo. App. 661.) And it should also have been affirmatively proven by plaintiff that the defendants had notice of the engineer's bad habits, and that the deceased had no such notice. (*Davies* v. *Oceanic S. S. Co.*, 89 Cal. 280; *Porter* v. *Western etc. R. R.*, 97 N. C. 66; 2 Am. St. Rep. 272; *Hatt* v. *Nay*, 144 Mass. 186; *Tonnesen* v. *Ross*, 58 Hun, 415; Wood on Master and Servant, sec. 349; *Fisk* v. *Central Pac. R. R. Co.*, 72 Cal. 43; 1 Am. St. Rep. 22; *Thomas* v. *Herrall*, 18 Or. 546; *Moss* v. *Pacific R. R. Co.*, 49 Mo. 169, 170; 8 Am. Rep. 126; *Wright* v. *New York Cent. R. R. Co.*, 25 N. Y. 566.) The marriage of plaintiff after the commencement of this action extinguished her authority to act as administratrix, and revoked her power to maintain the action. (Code Civ. Proc., sec. 1370.)

*Henry E. Highton*, for Respondent.

It was the duty of defendants to employ competent workmen, and their failure to do so rendered them liable for the death of the deceased. (*Texas etc. R. R. Co.* v. *Whitmore*, 58 Tex. 276, 286, 287; *Tyson* v. *North etc. R. R. Co.*, 61 Ala. 554; 32 Am. Rep. 8; *Coppins* v. *New York etc. R. R. Co.*, 122 N. Y. 557; 19 Am. St. Rep. 523; *Taylor* v. *Western Pac. R. R. Co.*, 45 Cal. 323, 334; *Beeson* v. *Green Mt. G. M. Co.*, 57 Cal. 20, 29; *Huntingdon etc. R. R. Co.* v. *Decker*, 84 Pa. St. 419, 423; *Moss* v. *Pacific R. R. Co.*, 49 Mo. 167, 169; 8 Am. Rep. 126; *Wright* v. *New York Cent. R. R. Co.*, 28 Barb. 80, 85; *Noyes* v. *Smith*, 28 Vt. 59, 64; 65 Am. Dec. 222; *Chapman* v. *Erie Ry. Co.*, 55 N. Y. 579, 585; *Illinois Cent. R. R. Co.* v. *Jewell*, 46 Ill. 99, 101; 92 Am. Dec. 240; *Wabash Ry. Co.* v. *McDaniels*, 107 U. S. 454, 459; *Michigan Cent. R. R. Co.* v. *Gilbert*, 46 Mich. 176, 182; 1 Shearman and Redfield on Negligence, 4th ed., secs. 191, 223; Beach on Contribu-

tory Negligence, 2d ed., sec. 353.)    An intemperate person is an incompetent and unfit servant to place in charge of an engine. (*Gilman* v. *Eastern R. R. Co.*, 13 Allen, 433, 444; 90 Am. Dec. 210; *Monahan* v. *Worcester*, 150 Mass. 439; 15 Am. St. Rep. 226; *Michigan Cent. R. R. Co.* v. *Gilbert*, 46 Mich. 176, 182; *Chicago etc. R. R. Co.* v. *Sullivan*, 63 Ill. 293.)    The question of the competency of the engineer for such position was essentially a question for the jury. (*Kean* v. *Detroit Copper Mills*, 66 Mich. 277; 11 Am. St. Rep. 492; *Taylor* v. *Western Pac. R. R. Co:*, 45 Cal. 323, 334, 335; *Hilts* v. *Chicago etc. Ry. Co.*, 55 Mich. 437; *Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48, 56.)    When the habit of intoxication is shown, it raises, in case of accident, a presumption of negligence, and the burden is thenceforth on the defendant to prove that the culpable employee was not intoxicated at the time of the accident. (*Pennsylvania R. R. Co.* v. *Books*, 57 Pa. St. 339, 343; 98 Am. Dec. 229; *Huntingdon etc. R. R. Co.* v. *Decker*, 84 Pa. St. 419, 424, 425.)    Evidence of the general reputation of the engineer of being intemperate was admissible as tending to show that the defendants, if they had used due care, must have known that he was intemperate, and, therefore, an unsuitable servant to be employed by them. (*Gilman* v. *Eastern R. R. Co.*, 13 Allen, 443, 444; 90 Am. Dec. 210; *Monahan* v. *Worcester*, 150 Mass. 439; 15 Am. St. Rep. 226; *Tonnesen* v. *Ross*, 58 Hun, 415.)    To show a want of due care on the part of the master, either in employing or retaining a servant, it is competent to put in evidence his general reputation of unfitness for the duties assigned him. (*Grube* v. *Missouri Pac. Ry. Co.*, 98 Mo. 330, 339; 14 Am. St. Rep. 645.)    And for a like purpose, specific acts of negligence or incompetency, with evidence of knowledge thereof on the part of the master, or of such a character that the master should have known of them, are admissible. (*Grube* v. *Missouri Pac. Ry. Co.*, 98 Mo. 330, 339; 14 Am. St. Rep. 645; *Michigan Cent. R. R.*

v. *Gilbert*, 46 Mich. 179.) The marriage of plaintiff after the commencement of the action, however, did not deprive her of her office of administratrix, or affect her right to prosecute the action, but merely authorized her removal from such office upon proper proceedings for that purpose had in the probate court. (*Schroeder* v. *Superior Court*, 70 Cal. 343; *McMillan* v. *Hayward*, 94 Cal. 357, 361; *McCreary* v. *Taylor*, 38 Ark. 393.) Had the plaintiff, upon her remarriage, become incompetent to proceed further as plaintiff in the action, the question of such incapacity could only have been raised by a supplemental answer filed in the action; and the failure to interpose such answer would have been a waiver of the objection. (*Burlington etc. R. R. Co.* v. *Crockett*, 17 Neb. 570; *Dye* v. *Gritton*, 29 Ill. App. 54; *Dignowitty* v. *Coleman*, 77 Tex. 98; Code Civ. Proc., secs. 430, 434.)

Harrison, J.—The defendants are stevedores, and in August, 1885, were engaged in discharging a cargo of coal from the vessel " Henry Hyde," then lying at one of the wharves in San Francisco. The plaintiff's intestate was in their employ, and while so engaged a tub of coal, which was being hoisted from the hold of the vessel, swung around so that it might be emptied into another vessel alongside, and struck him with such force as to cause injuries from which he died. The plaintiff, as the administratrix of his estate, brought this action against the defendants to recover the damages sustained by his death, alleging that it was caused by reason of their negligence. The coal was hoisted by means of a donkey engine on the wharf, which was in charge of an engineer named Murphy, who at signals from another employee started and stopped the engine; and it is claimed by the plaintiff that the injury to the deceased was caused by the negligence of this engineer; and, in order to avoid the rule of law which exonerates the employer from liability to an employee for an injury resulting from the negligence of a fellow-servant, the

plaintiff sought to show that Murphy was addicted to the habit of drinking intoxicating liquors, and that this fact was of such notoriety that it must have been known to the defendants, and that, therefore, they were guilty of negligence in having him in their employ. The cause was tried by a jury, and a verdict rendered in favor of the plaintiff. The defendants have appealed.

Murphy's capacity as an engineer, aside from the impairment of such capacity by reason of this alleged habit, does not seem to have been questioned by the plaintiff, and there was ample evidence of such capacity shown at the trial. The plaintiff did not attempt to show that Murphy was intoxicated at the time of the accident, nor was there any evidence of that purport before the jury. Murphy himself testified, and there was no evidence tending to contradict his statement, that he was not intoxicated on the day of the accident, and had not taken any intoxicating liquors, either on that day or for a year prior thereto. The testimony of Nagle that in the morning of that day, while Murphy was fixing his engine, and seemed to be in a hurry, some one remarked: "I guess he is drinking a little," is not entitled to any consideration as evidence that he had in fact been drinking.

Upon the theory of the plaintiff that the injury resulted from the negligence of Murphy, if she would charge the defendants with the results of this negligence, by reason of their having him in their employ, with knowledge of his intemperate habits, it was necessary for her to show that the injury was in some respect the result of such intemperate habits. Unless the accident was in some way connected with such habit, or resulted from intemperance, the habit was not the cause of the negligence, and the defendants could not, by reason of their knowledge of this habit, be rendered liable for the negligence of Murphy resulting from any other cause. If the fact of Murphy's habit of intemperance at or about the time of the accident had been shown, the jury might have inferred that he was in that condition

at the time of the accident, and that his negligence was the result of this condition. Proof of his being under the influence of liquor at the time of the accident would be presumptive of his negligence, and, if it had appeared by direct evidence that he had a habit of intemperance, it would throw upon the defendants the burden of showing that he was not then in that condition; but proof that he had at some previous time the reputation of having the habit is not proof of the fact that he did have the habit. To allow the proof of his reputation for drunkenness to be equivalent to establishing the fact that he had the habit of drunkenness, and from that to make the further inference that from his habit he was so at this time, would be to draw an inference from a presumption. Unless facts are shown from which negligence may be reasonably inferred, a jury should never be permitted to infer, arbitrarily and without evidence, that there was negligence. When a fact is established, some other fact may be justly inferred therefrom, but when the plaintiff, instead of presenting a fact or facts from which the negligence of the defendant may be reasonably inferred, gives to the jury only a presumption drawn from other facts, the jury are not to be allowed to infer negligence from such presumption. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. (See *Douglass* v. *Mitchell*, 35 Pa. St. 443.)

For the purpose of establishing this habit in Murphy, the plaintiff offered evidence of his reputation in the matter of drinking, and also the testimony of certain witnesses that they had at times seen him " under the influence" of liquor. None of the witnesses testified that they had ever seen him intoxicated, or that he was in fact accustomed to habitual drinking. It was shown that he would occasionally drink, "to be sociable and pleasant," and also that it was quite common for engineers to drink. One witness, when asked about his habits with respect to drink prior to the day of the

accident, said: "I have seen him take a drink once in a while. I have seen him when he was pretty full"; and when asked how frequently, said: "Well, not very often. It might be once a week, or something like that." Another witness, when asked with reference to his habits of drink, said that "for some months prior to 1885" he would take a drink frequently, and that quite a number of times he had known of his drinking to excess; that for four, five, or six years before the trial (March, 1891) he had not conducted himself so well with respect to drink, and a great many would not employ him. The witness did not, however, state when or how frequently he had known of his drinking to excess. Another of the plaintiff's witnesses testified that the "standing" of Murphy "along about 1885" was bad on account of drinking, and that among the pile-drivers for four or five years prior to the trial he was not thought to be a "safe" man. Another, who had seem him drink in 1883, said that since that time "I have considered that he drank too much whiskey to take care of an engine." He does not, however, state that he had had any knowledge of Murphy's habits or conduct during two years prior to the accident. This was substantially all the evidence that was given by the plaintiff for the purpose of showing that Murphy was addicted to the habit of drinking. When the evidence was offered the defendants reserved the right to move to strike it out, if the plaintiff failed to bring it home to them, or should fail to show that Murphy was under the influence of liquor at the time of the accident; and at the close of the plaintiff's case they made this motion, and it was denied by the court.

This motion should have been granted. It cannot be said that to take an occasional sociable drink, or even to be occasionally "under the influence" of drink, constitutes a habit of drinking, or that a jury would be authorized to infer from such evidence that the man had been rendered incapable of properly managing his engine, when he had not been drinking for a year prior

thereto.   Proof of specific acts is not equivalent to proof that Murphy had either this reputation, or the habit. " Character for care, skill, and truth of witnesses, parties, or others, must all alike be proved by evidence of general reputation, and not of special acts.   (1 Greenleaf on Evidence, secs. 461–69.)   Character grows out of special acts, but is not proved by them, though, indeed, special acts do very often indicate frailties or vices that are altogether contrary to the character actually established, and sometimes the very frailties that are proved against a man may have been regarded by him in so serious a light as to have produced great improvement of character."   (*Frazier* v. *Pennsylvania R. R. Co.*, 38 Pa. St. 110; 80 Am. Dec. 467.)   The instruction of the court upon this proposition, given at the request of the plaintiff, that " If an engineer should be proved skillful and competent to run a dummy engine by reason of his intelligence, skill, and experience, and yet should be unsteady and unreliable on account of a habit of drinking intoxicating liquors to excess, he would not be a competent engineer within the meaning of the ·law"— should not have been given.   There was no evidence before the jury from which they were authorized to find that Murphy had the habit of drinking intoxicating liquors to excess, or that he was unsteady or unreliable at the time of the accident.

While proof that Murphy. had a general reputation for drunkenness might be held to impute to the defendants knowledge of such reputation, and, consequently, impose upon them the necessity of making inquiry with reference to the fact, and charge them with the consequences of not doing so, yet such proof would not establish the fact that he was in reality so addicted, and it might be that the inquiry by the defendants, after being informed of the reputation, would show that the reputation was without foundation; otherwise, the defendants would be charged with the consequences of a trait that never existed.   Upon this proposition the court instructed the jury as follows: " If you believe from the evidence that,

under the law as explained to you by the court, James Cosgrove was injured without contributory negligence on his own part, through the negligence of the engineer, James Murphy, and that the said James Murphy was a man whose habits of drinking had impaired his *standing* among engineers of his class, and among the employers of such engineers, and was not a safe man to be employed to run a dummy engine in connection with stevedoring work in discharging ships, and that the defendants knew, or by reasonable inquiry might have known, these facts, and that, nevertheless, they employed him on August 25, 1885, to run the engine in discharging coal from the *Henry Hyde*, and that said James Cosgrove did not know, and had no means of knowing, of the engineer's drunkenness and unfitness, then your verdict should be for the plaintiff." This instruction should not have been given. Aside from the statement implied therein that the drunkenness and unfitness of Murphy was a fact in the case, the "standing" of Murphy among engineers or employers was an immaterial element in determining his capacity or negligence. It was relevant only for the purpose of putting the defendants upon notice that such was his reputation, and bound by the consequences, if the reputation was founded upon fact. The knowledge by the defendants of Murphy's standing among engineers did not charge them with any negligence, if he did not in reality have the habit of drinking, and, as we have seen above, there was no evidence before the jury of any drunkenness of Murphy at the time of the accident, or from which they could draw the inference that at that time he had a habit of drinking.

It appeared at the trial that the plaintiff was the wife of the deceased, and that after the commencement of the action, and before the trial, she had remarried. The defendants objected that by her remarriage her authority as administratrix was extinguished, and she could no longer maintain the action. It has been held, however, that the marriage of an executrix does not, *eo*

*instanti*, deprive her of her power to act, but is merely ground for a proceeding for her suspension and removal. (*Schroeder* v. *Superior Court*, 70 Cal. 343; *McMillan* v. *Hayward*, 94 Cal. 357.)   The same principles apply in the case of an administratrix as an executrix, and there was, therefore, no error in this ruling of the court.

As the case is to be remanded for a new trial, we do not deem it proper to indicate any opinion concerning the weight of evidence upon the issues of negligence or contributory negligence.

The judgment and order are reversed.

McFARLAND, J., concurred.

FITZGERALD, J., concurred in the judgment.

GAROUTTE, J., concurring.—It is claimed that the accident occurred by reason of the negligence of the engineer, a servant of the defendants and a fellow-servant with the deceased.   To support plaintiff's case under this state of facts it was not only necessary to prove that the engineer was intoxicated at the time of the accident, but that defendants were guilty of negligence in employing him.   It was proven that his general reputation for sobriety was bad, and it may be conceded for the purposes of this case, at least, that defendants were lacking in the exercise of due and proper care in hiring such a man.   But there is no evidence in the record that he was intoxicated at the time of the accident, and nothing therein from which we are justified in drawing an inference to that effect.   I concur in the judgment.

DE HAVEN, J., concurred in the opinion of Mr. Justice Garoutte.

Rehearing denied.