[No. 19577.   Department Two.—July 13, 1895.]

# W. H. GIER, RESPONDENT, *v.* LOS ANGELES CONSOLIDATED ELECTRIC RAILWAY COMPANY, APPELLANT.

NEGLIGENCE—MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—PLACE OF DANGER.—A conductor on a street railway while engaged in switching his car from the main to a side track is not guilty of contributory negligence in standing in the space between the two tracks, if such position was the usual one assumed by the employees in performing that duty, and was not, in itself, a place of peril.

ID.—SELECTION OF EMPLOYEE—INQUIRY AS TO FITNESS.—A railroad company cannot be charged with negligence in the selection of an employee, merely because it omitted to question the employee himself as to his competency, skill, and carefulness at the time of his employment, if it made such inquiries of his former employers.

ID.—RETENTION OF UNFIT EMPLOYEE. — Under section 1971 of the Civil Code, an employer is as much guilty of a lack of ordinary care by the retention of an unfit employee, after knowledge of his unfitness, as by a failure to use due diligence at the time of his selection, and in either case the employer is liable for all losses resulting therefrom.

ID.—KNOWLEDGE OF UNFITNESS—BURDEN OF PROOF.—An employer who has exercised due care in the selection of an employee cannot be held liable for an injury to a co-employee occasioned by the employee, unless the latter had become and was actually unfit or incompetent through negligence or incapacity, and the injury happened by reason thereof, and the employer knew of his negligence or incapacity or his general reputation was so in accord with the fact that the presumption is that the employer knew it, and was therefore negligent in not acting upon the knowledge, and the burden of proving such facts is on the employee injured.

ID.—BAD REPUTATION OF EMPLOYEE.—After proof of the fact of unfitness the employer may be charged with liability, if it can be shown that the reputation of the culpable employee was so generally known and notoriously bad that it ought to have been, and therefore presumptively was, known to the employer. But proof of bad reputation, without evidence of the fact of unfitness, is insufficient.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. H. CLARK, Judge.

The facts are stated in the opinion of the court.

*John D. Pope,* for Appellant.

*Murphy & Gottschalk,* for Respondent.

CVIII. CAL.—9

HENSHAW, J.—Appeals from the judgment and from the order denying a new trial.

Plaintiff, a conductor upon one of defendant's electric cars, was injured under the following circumstances: He had stopped his car and gone ahead to turn a switch to permit the passage of his car from one track to the other. He turned the switch, standing while doing so, in the V-shaped space made by the switch track and the main line. Another car coming up had stopped on the main line just behind him. At this moment his own car was moved forward by its motorman. The plaintiff was caught between the cars in the wedge-shaped space, crushed and injured.

This action is for a recovery on account of his injuries, and to maintain it he pleads the negligent and careless act of the motorman—admittedly a fellow-servant—and a lack of ordinary care upon the part of defendant in selecting and hiring the culpable employee.

Some charge is also made of defective and inadequate switching apparatus, but this contention seems to have been abandoned. In any event the record does not disclose any evidence in support of it, nor is argument addressed to maintain it.

Some evidence was introduced tending to prove that the plaintiff might with safety have stood in another place and turned the switch point, and that he voluntarily selected a dangerous spot from which to perform the act; but his position, it is shown, was the usual one, and not in itself a place of peril. No contributory negligence can be predicated upon that fact. (*Taylor* v. *Louisville etc. R. R. Co.*, 93 Tenn. 305.)

There is likewise conflicting evidence upon the question whether or not plaintiff ordered his motorman to move forward; but the verdict of the jury upon this disputed fact will not be disturbed.

The evidence, however, does abundantly establish that plaintiff suffered through the carelessness of the motorman in sending his car ahead under such circumstances as must inevitably bring death or serious injury to the

plaintiff, and upon this proposition not the least convincing evidence comes from the motorman himself. But herein it is to be noted that the act was not one evincing incompetency, employing the word strictly to denote a lack of skill or ability to use appliances or perform a duty in a workmanlike way, but was a single and signal exhibition of carelessness or recklessness— such, however, as the most competent man might at some time be guilty of. Nor does the evidence of plaintiff's witnesses establish, or seek to establish, incompetency as the word is here used. It is addressed to establishing the propositions that the motorman was, in fact, habitually reckless or careless, or both, and that his general reputation was in accord with this fact. If these propositions are satisfactorily demonstrated it follows from them that the defendant, being presumed to know this reputation, was negligent in not pursuing inquiries which would have shown that it was well founded, and that the man was an unfit employee.

Coming thus to the consideration of the employer's liability, the evidence shows that, in the selection, and at the time of the selection of the culpable motorman, the company did not fail to exercise ordinary care. The undisputed and supported testimony is that the defendant first employed the motorman as a driver of one of its horse-cars, and, upon changing the power to electricity, he was trained as a motorman, and had served continuously as such for a considerable period of time. The motorman had, previous to his employment by defendant, been the driver of a horse-car upon a line afterward acquired by defendant, and continued in the same occupation under the new management. At the time of the change inquiry was made by defendant of the former employers of the motorman as to his fitness and competency, and he was declared to be the best and most careful of the men. During all the time he was in defendant's employ, previous to the occurrence charged upon, no accident is proved to have hap-

pened to his car, or to any person or property, the responsibility for which attached to him.

Indeed, the court instructed the jury that there was no evidence "of any special acts of carelessness on the part of the motorman, Defrain, prior to the time when Gier was hurt, from which the jury would be authorized to find that said Defrain was either careless or incompetent as a motorman."

Respondent criticises the omission of defendant to question Defrain himself (the motorman) as to his competency, skill, and carefulness at the time of his employment. Such inquiry would be natural and prudent were no better source of information at hand; but defendant was not in fault, since it took pains to avail itself of evidence upon the matter at once disinterested and superior, that of his former employer.

It appears, accordingly, that in the original selection of the employee the defendant was not remiss, did not fail to exercise ordinary care. The determination of this fact in its favor, defendant contends, entitles it to a reversal of the order and judgment. "An employer," says section 1970 of the Civil Code, "is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care *in the selection* of the culpable employee." The strict construction of this section for which appellant contends would support his contention and at the same time relieve the employer from all liability to an employee for the acts of such a culpable servant, even though afterward the employer had received knowledge that such servant had become grossly incompetent, reckless, or unfit, provided only that at the time of his selection ordinary care was exercised. Thus an employee, skillful and competent and careful at the time of his employment, might through drunkenness, or other vice, become wholly unfit and untrust-

worthy, yet, though knowledge of this were brought home to the employer, and he refused to act upon it, the helpless fellow-servant, himself perhaps in ignorance, would have no redress. A court would be strenuous against such a construction, and, if forced to adopt it, would regard it only as an inevitable and unfortunate miscarriage of justice.

But no such result need here arise. If necessary we should not hesitate to construe the acts of the employer under such circumstances as constituting a new selection of the culpable employee. This, however, we do not deem requisite. For the section following the one quoted provides generally that an employer must *in all cases* indemnify his employee for losses caused by the former's want of ordinary care. (Civ. Code, sec. 1971.) Such lack of ordinary care may as well be shown by the retention of an unfit employee after knowledge of the fact as by a failure to use due diligence at the time of his selection, and in either case the liability of the employer attaches.

The defendant then having exercised due care in the selection of Defrain, to render it liable for the injury complained of, it was necessary for the plaintiff to establish the following facts: 1. That the accident happened by reason of the carelessness or incapacity of Defrain; 2. That Defrain had become and was actually unfit or incompetent through negligence or incapacity; 3. That defendant knew this, or that Defrain's general reputation was so in accord with the fact that the presumption is that defendant knew it, and was therefore negligent in not acting upon the knowledge.

And this is so because the burden of proving the employer's negligence is on plaintiff. He attempts to do this by showing that his fellow-employee was, in fact, unfit and reckless, and that the employer knew this, or is presumed to have known it. It is, therefore, the *character* of the employee which is the object of ultimate determination, not his *reputation*. Where the plaintiff has established that the employee was, in fact, unfit and

incompetent, and has been able to show by direct proof that the employer knew this fact, the case so far is made out, and there is no need of or utility in evidence of reputation. But as such proof is difficult and frequently impossible to make, the law permits the employer to be charged after proof of the fact of unfitness, if it can be shown that the culpable servant's reputation for the particular matter in question was so generally and notoriously bad that it ought to have been, and therefore presumably was, known to him. For then, with knowledge of this reputation imputed to him, if the employer had acted with reasonable prudence upon this information, he would have discovered that the reputation was well founded, that the facts justified and supported it— in short, that he had in his employ an unreliable man.

It becomes apparent, therefore, that as evidence of reputation becomes necessary only where there is an inability to furnish direct proof of the employer's knowledge, so it is proper only after the establishment of the fact that the employee is in truth an unfit person. And reputation is not proof of that fact. A man's reputation may be at variance with his character or in accord with it. He may be reputed reckless, and in fact be careful. An employer is not bound to discharge an employee merely because of his ill repute; but he is culpable if he retains in his employ a servant with a bad reputation, well founded. So it is that evidence of individual acts evincing negligence or incompetency is admissible. It is admitted, not to show reputation, but to establish the second requisite specified, namely, that the employee was veritably unfit or incompetent.

Such is the rule. It will be found suggested or laid down with more or less particularity in the cases of *Cosgrove* v. *Pitman*, 103 Cal. 274; *Baulec* v. *New York etc. R. R. Co.*, 59 N. Y. 356; 17 Am. Rep. 325; *Davis* v. *Detroit etc. R. R. Co.*, 20 Mich. 105, 112; 4 Am. Rep. 364; *Norfolk etc. R. R. Co.* v. *Hoover*, 79 Md. 253; *Monahan* v. *City of Worcester*, 150 Mass. 439; 15 Am. St. Rep. 226; *Lake Shore etc. Ry. Co.* v. *Stupak*, 123 Ind. 210, 229.

Applying it to the case at bar, the first fact, as has been said, was clearly proved, and it may be conceded (though not decided) that the bad reputation of Defrain was sufficiently established. But, upon the other essential, the fact that Defrain was reckless or careless, there is not only a failure, but such an entire absence of proof, that the court was justified in its instruction to the jury to that effect. Plaintiff's case, as to this, then rests merely upon proof of reputation, but, as has been shown, proof of a reputation for unfitness is not proof of the fact of unfitness.

The judgment and order are reversed and the cause remanded.

MCFARLAND, J., and TEMPLE, J., concurred.